# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

ERNEST DEAN CARPENTER,

    Petitioner,

v.

D.W. NEVEN, *et al.*,

    Respondents.

Case No. 2:11-cv-00867-APG-CWH

**ORDER**

(ECF Nos. 3, 65)

    Before the court for a decision on the merits is an application for a writ of habeas corpus filed by Earnest Dean Carpenter, a Nevada prisoner. ECF No. 3.

**I. BACKGROUND**[1]

    On March 16, 2007, Carpenter was convicted of burglary, pursuant to a guilty plea, in the Second Judicial District Court for Nevada. The district court adjudicated Carpenter a habitual criminal and sentenced him to life in prison without the possibility of parole. Carpenter appealed to the Nevada Supreme Court.

    On February 13, 2008, the Supreme Court of Nevada affirmed the judgment of conviction. On September 30, 2008, Carpenter filed a proper person petition for a writ of habeas corpus in the state district court. With the assistance of appointed counsel, he filed a supplemental petition on January 20, 2009. On May 11, 2009, the state district court dismissed most of Carpenter's claims, but ordered an evidentiary hearing on his claim that he received ineffective assistance of counsel due to counsel's failure to adequately investigate his theory of defense, properly advise him of his rights, and present evidence at sentencing. After hearing the testimony of Carpenter's guilty plea/sentencing counsel, the district court denied the claim. Carpenter appealed.

---

[1] This history was compiled from exhibits filed at ECF Nos. 7-9 and 36 and this court's own docket entries.

In his opening brief before the Supreme Court of Nevada, Carpenter raised only one claim, arguing that trial counsel was ineffective for failing to present certain mitigating evidence at sentencing. On March 17, 2011, the Supreme Court of Nevada affirmed the denial of Carpenter's state habeas petition.

On May 24, 2011, Carpenter initiated this federal habeas proceedings. Respondents moved to dismiss the petition, arguing that certain claims in the petition were unexhausted. On January 11, 2011, this court granted the motion, in part, concluding that Grounds 1-B and 2 were exhausted but Grounds 3(a), 3(b), 3(c), 3(d), 3(e), 3(f), and 3(h) were unexhausted.

Carpenter was granted a stay and abeyance to allow him to return to state court. On May 1, 2013, he filed a second state habeas petition raising the claims this court found unexhausted. The state district court dismissed the petition as procedurally defaulted. The Nevada Supreme Court affirmed that decision.

Pursuant to Carpenter's motion, the stay was lifted on July 30, 2014. On September 29, 2014, respondents moved to dismiss grounds 3(a)-(f), and (h) as procedurally defaulted. This court granted the motion.

The court now addresses Carpenter's remaining claims – Grounds 1, 1-B, 2, and 3(g) – on the merits.

**II. STANDARDS OF REVIEW**

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite than that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual

determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") Because *de novo* review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

### III. ANALYSIS OF CLAIMS

**Ground 1**

In Ground 1, Carpenter argues that his sentence of life without the possibility of parole for a non-violent crime constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment.

Carpenter presented Ground 1 in the direct appeal of his conviction and sentence. ECF No. 7-19. The Nevada Supreme Court addressed the claim as follows:

> Appellant contends that the district court abused its discretion by imposing an excessive sentence. Citing to the dissent in *Tanksley v. State*[1] for support, appellant argues that this court should review the sentence imposed by the district court to determine whether justice was done. Appellant argues that his sentence was excessive given that his six prior felony convictions were primarily non-violent property offenses and occurred over a span of thirty years.[2] We disagree with appellant's contention.
>
> The Eighth Amendment does not require strict proportionality between crime and sentence, but forbids only an extreme sentence that is grossly disproportionate to the crime.[3] Regardless of its severity, a sentence that is within the statutory limits is not "'cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience.'"[4]

---

[1] 113 Nev. 844, 852, 944 P.2d 240, 245 (1997) (Rose, J., dissenting).

[2] The convictions included: a January 22, 1976, conviction for one count of burglary and one count of possession of stolen property; a May 4, 1976, conviction for one count burglary; a July 1, 1980, conviction for three counts of burglary; a March 3, 1989, conviction for one count of burglary; a February 16, 1994, conviction for one count of attempted grand larceny; and an August 19, 1997 conviction for one count of ex-felon in possession of a firearm and possession of stolen property.

[3] *Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion).

[4] *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (quoting *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979)); *see also Glegola v. State*, 110 Nev. 344, 348, 871 P.2d 950, 953 (1994).

This court has consistently afforded the district court wide discretion in its sentencing decision.[5] This court will refrain from interfering with the sentence imposed "[s]o long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence."[6]

In the instant case, appellant does not allege that the district court relied on impalpable or highly suspect evidence or that the relevant statutes are unconstitutional. Further, we note that the sentence imposed was within the parameters provided by the relevant statutes and the habitual criminal statute makes no special allowance for non-violent crimes.[7] Here, the district court based its sentence on the circumstances surrounding the burglary at issue in this case and appellant's long history of criminal conduct. Accordingly, we conclude that the sentence imposed does not constitute cruel and unusual punishment.

ECF No. 8-1, p. 2-4.[2]

The U.S. Supreme Court has routinely held that the Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime, and does not require strict proportionality between the crime and sentence. *See Ewing v. California*, 538 U.S. 11, 28–30 (2003) (upholding 25 years to life sentence for theft of three golf clubs imposed on defendant with long history of felony recidivism); *Andrade*, 538 U.S. at 77 (upholding two consecutive terms of 25 years to life for felony theft of videotapes imposed on defendant with prior felony burglary convictions); *Rummel v. Estelle*, 445 U.S. 263, 271 (1980) (upholding life sentence, with the possibility of parole, imposed on defendant convicted of felony theft (for obtaining $120.75 by false pretenses), and who had prior felony convictions for fraudulent use of a credit card and passing a forged check); *but see Solem v. Helm*, 463 U.S. 277, 288 (1983) (striking recidivist sentence of life, without possibility of parole, because uttering a "no account" check for $100 is nonviolent crime, and defendant's six prior felonies were relatively minor).

---

[5] *See Houk v. State*, 103 Nev. 659, 747 P.2d 1376 (1987).

[6] *Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976).

[7] *See* NRS 205.060(2); NRS 207.010(2).

[2] References to page numbers in the record are based on CM/ECF pagination.

When viewed against the backdrop of these cases, the trial court's sentence did not amount to an Eighth Amendment violation. The nature of the burglary Carpenter committee, together with his history of prior felonies, justified a harsh sentence. Carpenter's presentence investigation report reveals numerous arrests and additional criminal convictions spanning a 30-year period. ECF No. 7-10, p. 15-23; ECF No. 10-1. "The district court at sentencing made it clear that appellant received life without the possibility of parole because of his lengthy criminal history and the fact that he never demonstrated in the past that he could be rehabilitated despite numerous chances to do so." ECF No. 9-31, p. 3. Given Carpenter's recidivism and the threat he posed to the public, his sentence was not so extreme as to be grossly disproportionate to the crime. Accordingly, the Supreme Court of Nevada's decision to deny Carpenter's Eighth Amendment claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.

Ground 1 is denied.

**Ground 1-B**

In Ground 1-B, Carpenter claims his constitutional right to due process was violated because the trial court did not comply with his plea agreement at sentencing. According to Carpenter, the plea agreement and the trial court led him to believe that five to 20 years was a possible sentence, but the court subsequently refused to consider that option. He claims that he entered his guilty plea in reliance on the possibility that he could be sentenced to five to 20 years.

Carpenter presented Ground 1-B in the direct appeal of his conviction and sentence. ECF No. 7-19, p. 9. The Nevada Supreme Court addressed the claim as follows:

> Appellant also argues the district court breached the plea agreement by refusing to consider a sentence of five to twenty years. We disagree. In his plea agreement, appellant acknowledged that the district court was not bound by any agreement of the parties and that the matter of sentencing was to be determined solely by the district court. Moreover, the plea agreement only indicated that the State was free to seek an habitual criminal adjudication pursuant to NRS 207.010. NRS 207.010(1)(a) provides for a term of five to twenty years if a person has been convicted of two previous felonies. NRS 207.010(1)(b) allows for the following sentences if a person has been convicted of three or more felonies: a definite term of twenty five years with parole eligibility after ten years served, life with the possibility of parole after ten years served, or life without the possibility of parole. Here, the district court found beyond a reasonable doubt that appellant had been

> convicted of six prior felonies. Therefore, it was appropriate for the district court to consider the sentences provided for in NRS 207.010(1)(b).

ECF No. 8-1, p. 4-5.

Carpenter is correct that the guilty plea agreement included five to 20 years as one of four possible sentences. ECF No. 7-6, p. 4. At the sentencing hearing, the court indicated there were only three: life without the possibility of parole, life with the possibility of parole with eligibility beginning after a minimum of ten years, and a definite term of 25 years with eligibility for parole beginning after a minimum of ten years. ECF No. 7-10, p. 45.

In response to the court's inquiry as to the existence of a fourth option, Carpenter's counsel stated:

> Well, the State put this in the guilty plea memorandum, saying 5 to 20. I think if you go on to the next paragraph in NRS 207.010, I think it indicates that if there are at least two prior convictions there will be the 5 to 20. Obviously, he's eligible for the whole range because of the three – well, actually six that the Court has admitted, but I'm just saying that I believe that that is available for the Court's discretion upon the finding of habitual criminality, those are the range of four that he is eligible for in 1ight of the –

At which point the court stated that it was "going to consider just these three." *Id.*, p. 46.

Under *Santobello v. New York*, 404 U.S. 257, 261-62 (1971), a criminal defendant has a due process right to enforce the terms of his plea agreement. However, clearly established federal law has long held that "the construction and interpretation of state court plea agreements 'and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law.'" *Buckley v. Terhune*, 441 F.3d 688, 694-95 (9th Cir. 2006) (quoting *Ricketts v. Adamson*, 483 U.S. 1, 6 n. 3 (1987). Here it is not clear whether the trial court excluded the fourth sentencing option as matter of discretion or as a matter of law based on its interpretation of Nev. Rev. Stat. § 207.010. In either case, the Nevada Supreme Court's analysis of Carpenter's claimed breach of the agreement was "within the broad bounds of reasonableness."

In addition, even if the state court violated Carpenter's due process rights, he would still need to show that the claimed sentencing error – i.e., the court excluding the five to 20 year sentencing option from consideration – had a "substantial and injurious effect" on the outcome. *See Buckley*, 441 F.3d at 697 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Here,

Carpenter's counsel practically conceded that five to 20 years was not a realistic sentencing option. ECF No. 7-10, p. 46. The burglary for which Carpenter entered the guilty plea involved a home invasion that escalated into a violent confrontation with the occupant of the home. *Id.*, p. 38-41. The circumstances of the burglary together with Carpenter's history of six prior felonies made it highly unlikely that the state court would impose a sentence that would allow for parole after five years. Thus, any error committed by the state court was harmless under *Brecht*.

Carpenter claims in his reply that he agreed to plead guilty in reliance on a promise from the State, conveyed to him by his counsel, that "he would receive no more than 5 to 20 years at sentencing." ECF No. 55, p. 31. This claim is wholly unsupported by the record. Carpenter's counsel, Cotter Conway, testified at the post-conviction evidentiary hearing that the State made a plea offer of ten to life, which Carpenter rejected. ECF No. 8-22, p. 10. Conway further testified that Carpenter did not want to stipulate to that sentence or to habitual criminal status, so the decision was made "to plead to the offense, but leave open for argument at sentencing whether he should be treated as a habitual and what that penalty should be." *Id.*, pp. 11, 28-29. An assurance from the State that Carpenter would receive no more than five to 20 years does not fit anywhere in this scenario, and Conway testified that he made no promises or guarantees as to the sentencing outcome. *Id.*, pp. 29-31. Carpenter points to no evidence conflicting with his counsel's testimony on this subject.

Ground 1-B. is denied.

**Ground 2**

In Ground 2, Carpenter alleges that his constitutional right to due process was violated because the trial court assumed, mistakenly, that he could be paroled within ten years if the court imposed a sentence of ten to life. Carpenter bases this claim on the following comments by the court at sentencing:

> In considering the range of penalties and – Mr. Carpenter, you are, by the grace of this State, the State is not asking for life imprisonment without the possibility of parole, which leads – well, the Court can certainly impose it if it seems fit, but when I look at the second sentence, the second most serious offense – penalty which the Court can impose, is a life with the possibility of parole, with eligibility for parole beginning at a minimum of 10 years. And what strikes me in this case is

1  we have a child who is in kindergarten, and if you are ever paroled within that 10
   years, she will be a teenager.

ECF No. 7-10, p. 47.[3]   The court then stated that it was imposing a sentence of life without possibility of parole. *Id*.  Carpenter contends that the court's "misinterpretation" resulted in him being sentenced to life without the possibility of parole.

Carpenter presented Ground 2 in the direct appeal of his conviction and sentence.  ECF No. 7-19, p. 9.  The Nevada Supreme Court addressed the claim as follows:

> Appellant finally argues that the district court believed that appellant would be released from prison within ten years if he were sentenced to life with the possibility of parole.  This assertion is belied by the record.  At the sentencing hearing, the district court did not indicate that appellant would be released within ten years.  Rather, the district court noted the possibility that appellant could be paroled within ten years if sentenced to life in prison with the possibility of parole.  Therefore, appellant's claim is not meritorious.

ECF No. 8-1, p. 5.

In his reply, Carpenter argues that the Nevada Supreme Court and, to some extent, the inmate who assisted him in drafting his federal petition misunderstood the thrust of the claim. ECF No. 55, p. 33-36.  In this regard, he claims that the trial court's error was not merely its mistaken belief as to when he might be released under a ten to life sentence, but that the court imposed the harsher sentence out of concern that he posed a future threat to the victim's daughter, a concern that was not supported by any evidence.

While the trial court's comments quoted above could have been phrased more clearly, they do not show that the court based its sentencing decision on a misunderstanding of applicable sentencing provisions or on other improper considerations.  For one, they do not indicate, as Carpenter suggests, that the court was under the impression that he could possibly serve less than ten years or that he would necessarily be released upon serving ten years.  Nor do they indicate that the court's sentence was significantly influenced by concern for the young girl's future

---

[3] The court was referring to the daughter of the occupant/victim who confronted Carpenter in the home.  According to the victim's statement at the sentencing hearing, the daughter was not home at the time of the burglary, but the victim felt compelled to tell her what occurred and explain that "there are bad people out there." *Id*., pp. 40-41.

safety. Rather, it appears as if the court was merely making the point that a ten to life sentence could possibly result in Carpenter being released before the girl even reached adulthood.

Moreover, Carpenter falls well short of establishing that any error in sentencing was of sufficient magnitude to entitle him to habeas relief. *See Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."). As mentioned above, the nature of the burglary together with Carpenter's history of six prior felonies justified a harsh sentence. Carpenter's presentence investigation report reveals numerous arrests and additional criminal convictions spanning a 30-year period. ECF No. 7-10, p. 18-19; ECF No. 10-1. Given Carpenter's recidivism and the threat he posed to the public, the court's sentence was not fundamentally unfair.

Ground 2 is denied.

**Ground 3(g)**

In Ground 3(g), Carpenter claims he received ineffective assistance of counsel because his counsel, Conway, did not present an available psychiatric report or psychiatric testimony as mitigating evidence. According to Carpenter, such evidence would have demonstrated his lack of criminal intent and would have resulted in a lesser sentence.

The report in question was prepared just prior to sentencing by Melissa Piasecki, M.D., at Conway's request. ECF No. 46-1. Dr. Piasecki's conclusion was that Carpenter's actions with respect to the burglary were "influenced by delusional beliefs," those being that officers from the Repeat Offenders Program Enforcement (ROPE) team had been stalking him and getting arrested was a means to elude them. *Id.*, p. 5. In testifying at the post-conviction evidentiary hearing over two years later, Conway could not pinpoint his reasons for not presenting the report, but he noted that it could have been for a variety of reasons, such as him not considering the report to be helpful or because the report contained statements by Carpenter that conflicted with those contained in the presentence investigation report. ECF No. 8-22; pp. 26, 35.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel (IAC): a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

Carpenter presented the IAC claim contained in Ground 3(g) in his state post-conviction proceeding. ECF No. 9-26. The state supreme court addressed the claim as follows:

> On appeal, appellant claims that the district court erred by denying his claim that he received ineffective assistance of counsel at sentencing. Specifically, appellant claims that trial counsel was ineffective for failing to present a psychological examination report to the district court in order to mitigate his sentence. Appellant failed to demonstrate that counsel was deficient or that he was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432–33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). It is not clear that the psychological examination report would have been mitigating. The statements that appellant made to the psychologist contradicted statements he made to the police, which were included in the presentence report. Moreover, even though appellant's reasons for committing the crime may have been based on delusional thoughts, appellant's statements to the psychologist demonstrate that he knew what he was doing was wrong. Further, appellant failed to demonstrate a reasonable probability that he would have received a different sentence had counsel presented the psychological examination report. *Id*. The district court at sentencing made it clear that appellant received life without the possibility of parole because of his lengthy criminal history and the fact that he never demonstrated in the past that he could be rehabilitated despite numerous chances to do so. Therefore, the district court did not err in denying the petition.

ECF No. 9-31, p. 2-3.

The Nevada Supreme Court correctly identified *Strickland* as the federal law standard applicable to Ground 3(g). Each of the court's determinations of fact were supported by the record and were therefore reasonable in light of the evidence presented in the state post-conviction proceeding. The court's conclusions regarding both prongs of the *Strickland* test were also reasonable. And, in addition to the record establishing valid reasons for not presenting Dr. Piasecki's report, this court also notes that Dr. Piasecki interviewed Carpenter one week before the sentencing hearing, at Conway's request, and issued her report four days before the hearing.

Thus, it is far more likely that Conway made a reasoned decision to not present the report as opposed to overlooking or inadvertently omitting it. *See Burger v. Kemp*, 483 U.S. 776, 794-95 (1987) (finding no ineffectiveness where there was "a reasonable basis for [counsel's] strategic decision"); *cf. Porter v. McCollum*, 558 U.S. 30, 39-40 (2009) (per curiam) (finding deficient performance during the penalty phase where "counsel did not even take the first step of interviewing witnesses or requesting records" and "thus failed to uncover and present any evidence of [petitioner's] mental health or mental impairment").

Because the Nevada Supreme Court's rejection of the ground is entitled to deference under §2254(d), Ground 3(g) is denied.

### IV. CONCLUSION

For the reasons set forth above, Carpenter's petition for habeas relief is denied.

*Certificate of Appealability*

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Carpenter's petition, the court finds that only one of those rulings meets the *Slack* standard: Ground 1, alleging that Carpenter's sentence of life in prison without the possibility of parole violated his Eighth

Amendment rights. The court therefore issues a certificate of appealability on Ground 1 and declines to issue a certificate of appealability for its resolution of any other procedural issues or habeas claims.

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus **(ECF No. 3) is DENIED**. The Clerk shall enter judgment accordingly and close this case.

IT IS FURTHER ORDERED that a **certificate of appealability is ISSUED with regard to Count 1 and DENIED with regard to the other counts**.

IT IS FURTHER ORDERED that petitioner's motion to extend the time within which to appeal **(ECF No. 65) is DENIED**.

DATED this 29th day of August, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE